Filed 5/18/23  P. v. Zichko CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT JOHN ZICHKO,<br><br>    Defendant and Appellant. | 2d Crim. No. B321326<br>(Super. Ct. No. F311715001)<br>(San Luis Obispo County) |

Robert John Zichko appeals from an order extending his commitment to the Department of State Hospitals (DSH) as an individual found not guilty by reason of insanity (NGI).  (Pen. Code,[1] §§ 1026, 1026.5.)  Appellant contends (1) the trial court violated his due process rights by declining to continue his trial and release him pending trial as provided in *People v. Lara* (2010) 48 Cal.4th 216 (*Lara*); (2) his trial attorney provided constitutionally ineffective assistance of counsel (IAC); (3) he was denied a hearing on his request to be released into a conditional

_____

[1] All statutory references are to the Penal Code.

release program (CONREP); and (4) the laws that apply to NGI's seeking outpatient treatment violate equal protection principles. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2003, appellant was found NGI for making criminal threats (§ 422) and was committed to DSH for treatment. He has since been committed to DSH pursuant to numerous extensions. On December 8, 2021, DSH sent a letter to the San Luis Obispo County District Attorney's Office (the District Attorney's Office) requesting that it file a petition for another extension of appellant's commitment, which was set to expire on May 15, 2022.

On March 30, 2022, the People filed a petition to extend appellant's NGI commitment pursuant to section 1026.5, subdivision (b). That same date, the trial court ordered DSH to comply with the prosecution's request to produce records regarding appellant's most recent two-year commitment. The petition did not purport to make a showing of good cause for being filed less than 90 days prior to the expiration of appellant's commitment, as provided under subdivision (b)(2) of section 1026.5.

On April 7, 2022, appellant requested a court trial on the petition and declined to waive the time requirements for his trial. When the parties appeared on April 12 to discuss the trial date, the prosecutor said she did not "have a clear answer" regarding the cause for the delayed filing of the petition but noted that the statutory deadlines set forth in section 1026.5, subdivision (b)(2) are not jurisdictional. The court then set a trial date of May 10, 2022.

On May 2, appellant filed a motion to dismiss the petition or, in the alternative, to release him from custody pending his trial as contemplated in *Lara*, *supra*, 48 Cal.4th 216. Defense counsel asserted that due to the late filing of the petition he would not be ready to proceed with appellant's trial on May 10. Counsel offered that he would not be receiving DSH's records regarding appellant's most recent commitment until May 3. Counsel also stated his belief that an expert would not have time to review the records prior to the scheduled trial.

In their May 10 opposition, the People conceded that DSH did not file its request to extend appellant's commitment within 180 days prior to the expiration of his commitment (§ 1026.5, subd. (b)(2)) and that the petition to extend appellant's commitment was not filed at least 90 days prior to expiration of that commitment (*ibid*). The People noted, however, the the subject statutory deadlines are not jurisdictional and that appellant's trial was scheduled to take place prior to the expiration of his commitment. The People questioned whether appellant's attorney had made any efforts to retain an expert or provide them with either the subpoenaed records he had received on May 4 or the prosecution expert's 20-page report. The People also indicated that DSH would seek to confine appellant under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.) if the court were inclined to release him pending trial. Finally, the People submitted a declaration from a clerk with the District Attorneys' Office offering that she was responsible for the delayed filing of the petition to extend appellant's commitment due to increased duties related to COVID-19.

Appellant's trial was subsequently continued until May 13, and the hearing on his motion was held on May 12. At the May

hearing, defense counsel argued that the People had not presented good cause for the delayed filing of the petition to extend his commitment (§ 102.6, subd. (b)(2)) and claimed that any expert retained by the defense would need "three weeks at a minimum before they will agree to help us." Counsel also make clear, however, that the "option" of a trial postponement with an LPS hold was "not an acceptable one for us" and that appellant was "moving for a dismissal, [with the] understanding that this Court is restrained by" our Supreme Court's holding in *Lara*, *supra*, 48 Cal.4th 216.

The court denied appellant's motion. After questioning whether the impacts of COVID-19 established good cause for the delayed filing of the petition to extend appellant's NGI commitment, the court found that appellant had failed to demonstrate he suffered any prejudice as a result of the delay. Among other things, the court reasoned that (1) appellant had been represented by the San Luis Obispo Public Defender's Office in all proceedings related to his NGI commitments; (2) defense counsel had 45 days to consult with an expert and provide them with appellant's 16 prior medical records dating back to 2014 (of which the court took judicial notice); and (3) the court had not been presented with any evidence that appellant's "circumstances have changed." The court denied the motion "without prejudice to it being raised [again], should there be [an] additional showing made at [trial] or in the future."

Trial on the People's petition to extend appellant's NGI commitment was held the following day. One of appellant's treating psychiatrists opined among other things that appellant, who has a longstanding diagnosis of schizophrenia, was presently delusional and exhibiting signs of grandiose paranoia. The doctor

4

was unsure if appellant would voluntarily take his medication in the community and opined that he lacked insight into his disorder and would constitute a substantial danger of physical harm to others if released. A psychologist who evaluated appellant in 2021 also opined that appellant met the criteria for an extended NGI commitment, and noted that his commitment offense involved him making threatening statements to employees in a bank and then attempting to purchase a gun.

At the conclusion of the trial, the court granted the People's petition and entered an order extending appellant's NGI commitment until May 15, 2024. Defense counsel then asked to "put . . . on the record" that appellant "want[ed]" a CONREP placement without any recommendation from his treatment team, but counsel had told him "this Court cannot do that without the concurrence of the mental health professionals." The court replied: "Yeah. . . . The Court didn't take any evidence of that, and so the Court is not going to address [it] at this time. . . . [R]ight now there's nothing further to say about CONREP."

## DISCUSSION

### *Motion For Dismissal Or Release Pending Trial*

Appellant contends the trial court violated his due process rights by declining to delay his trial on the petition to extend his NGI commitment and order his release subject to LPS proceedings as provided in *Lara*, *supra*, 48 Cal.4th 216. He claims the judgment must be reversed and the matter remanded for a new trial and that he must be released from custody pending the new trial "unless a decision is made to commit him pursuant to the [LPS] Act." We are not persuaded.

NGI defendants are committed to a state hospital or other treatment facility unless and until their sanity has been fully

5

restored.  (§ 1026 et seq.)  An NGI commitment may be extended if the committee "represents a substantial danger of physical harm to others" due to "a mental disease, defect, or disorder." (§ 1026.5, subd. (b)(1).)  "At least 180 days before the current term ends the medical director 'shall' provide the district attorney with an opinion as to whether the defendant's commitment should be extended.  (§ 1026.5, (b)(2).)  The prosecution 'may' then file for an extension of commitment.  (*Ibid.*)  Unless good cause is shown, the petition 'shall' be filed at least 90 days before the commitment is to expire.  (*Ibid.*)  Unless good cause is shown, a trial on the petition 'shall' begin at least 30 days before the existing commitment is due to end.  (§ 1026.5 (b)(4).)  If the defendant is proven to currently represent a substantial danger as described in the statute, the court shall order a recommitment for an additional two years.  (§ 1026.5 (b)(8).)"  (*Lara, supra*, 48 Cal.4th at p. 222.)  However, the time limits set forth in section 1026.5 "are not jurisdictional."  (§ 1026.5, subd. (a)(2).)

In *Lara, supra*, 48 Cal.4th 216, the petition to extend the NGI commitment was filed less than a month before the committee's scheduled release date and the prosecutor conceded there was no good cause for the delay.  (*Id.* at p. 222.)  The trial court denied the committee's motion to dismiss the petition.  At the conclusion of a trial held seven months after his initial commitment ended, a jury found he represented a substantial danger of physical harm to others and his commitment was extended.  (*Id.* at p. 223.)  The Court of Appeal found that the committee's due process rights had been violated, reversed, and directed the trial court to grant the dismissal motion.  (*Ibid.*)

The Supreme Court reversed, recognizing that section 1026.5,'s deadlines are directory rather than mandatory "so long

as the petition is filed before the expiration of the current commitment." (*Lara, supra*, 48 Cal.4th at p. 221.) The court explained that where any of the time limits set forth in section 1026. have not been met, "the due process question must be evaluated on a case-by-case basis." (*Id.* at p. 232.) "'[D]ue process in this context requires a flexible balancing of any "prejudicial effect of the delay against the justification for the delay."'" (*Ibid.*) "The degree of prejudice will depend on a variety of factors, including how late the filing is, the amount of time reasonably required to prepare for trial and mount a defense, and whether action by the court or defense counsel contributed to the delay." (*Ibid.*, italics omitted.) The court also cited cases recognizing that no presumption of prejudice arises unless the delay at issue was "extended" and that "'"[w]here prejudice is not presumed, it is incumbent upon the defendant to show circumstances of actual prejudice."'" (*Id.* at p. 230.)

The court in *Lara* went on to hold that the NGI committee in that case "did not suffer prejudice in the primary sense of the term" because "[t]he fairness of his eventual trial was not affected by the due process violation." (*Lara, supra*, 48 Cal.4th at p. 233.) Accordingly, he was not entitled to dismissal of the petition. (*Id.* at p. 236.) The court recognized, however, that the committee "did suffer prejudice in one sense" because "[t]he prosecution's unexcused late filing forced him to choose between going to trial unprepared or being held without trial beyond [his] release date." (*Id.* at p. 233.) Although the remedy for that prejudice would have been release pending trial subject to LPS proceedings, the defendant was no longer eligible for such release because "[t]he court retained jurisdiction to try the petition. The trial, while untimely, was ultimately fair. Therefore, violation of the

7

statutory timelines does not warrant reversal." (*Id*. at p. 236, fn. omitted.)

Even assuming that appellant had suffered prejudice as contemplated in *Lara*, when he was given the choice between going to trial unprepared or being held without trial beyond his release date, he is not entitled to the remedy set forth in that case. As the People note, defense counsel made clear to the trial court that appellant wanted a *dismissal* of the extension petition and did not want to continue his trial unless the court agreed to release him pending the trial *without* any possibility of an LPS hold. The trial court cannot be faulted for declining to order a remedy that appellant made clear he did not want. Because appellant invited the court's alleged error in failing to continue his trial and order his release subject to LPS proceedings, he is estopped from asserting that error on appeal. (*People v. Duncan* (1991) 53 Cal.3d 955, 969.)[2]

In any event, appellant's due process claim fails on the merits. He does not dispute that he bore the burden of proving actual prejudice, yet he failed to meet that burden.[3] Appellant, unlike the NGI committee in *Lara*, was not held for trial beyond his scheduled release date. Moreover, the petition to extend appellant's commitment was filed 45 days prior to the expiration

---

[2] Because appellant insisted that he wanted to be released without any possibility of an LPS commitment, we also reject his contention that the court erred in weighing the potential prejudice arising from the delayed extension proceedings against the need for public safety.

[3] The People concede on appeal that they did not make a showing of good cause for failing to meet the time deadlines set forth in subdivision (b)(2) of section 1026.5.

of his commitment, counsel was promptly appointed thereafter to represent him, and counsel received appellant's most recent medical records 8 days prior to trial.  Although counsel represented that he would not be ready for the scheduled trial because any expert retained by the defense would need at least three weeks to review the evidence and offer an opinion, the court rejected counsel's proffer as "conclusory."

The court further reasoned that appellant had been represented by the Public Defender's Office in all proceedings, counsel had sufficient time to consult with an expert and provide them with appellant's prior medical records, and there was no evidence of changed circumstances.  Moreover, the motion was denied "without prejudice to it being raised [again], should there be [an] additional showing made at [trial] or in the future."  The trial was ultimately held and appellant offers no evidence that his counsel was unprepared or that his trial was otherwise unfair.  Appellant's due process claim accordingly fails.

### *IAC*

As an alternative to his first contention, appellant asserts that his trial attorney provided IAC by failing to consult with an expert prior to trial.  To prevail on this claim, appellant must establish both deficient performance and prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674] (*Strickland*).)  The deficient performance component of the claim requires a showing that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms.  (*Id.* at p. 688.)  To establish prejudice, appellant must show a reasonable probability that he would have achieved a more favorable result absent counsel's deficient performance.  (*Id.* at p. 694.)  IAC claims are "particularly

9

difficult" to establish on direct appeal. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Appellant fails to establish either prong of his IAC claim. As the People note, it is unclear from the record whether counsel actually consulted with an expert. Even if counsel did not consult with an expert and his failure to do so was objectively unreasonable, appellant merely speculates that he would have achieved a more favorable result had an expert been consulted. His IAC claim thus fails. (*Strickland*, *supra*, 466 U.S. at p. 687.)

### *CONREP*

Appellant next contends the trial court erred in failing to hold a hearing on his "request" for a CONREP release under section 1026.2. But appellant made no such request. Rather, defense counsel merely stated for the record that appellant wanted be released into a CONREP "without any sort of recommendation" from the mental health professionals who have treated and evaluated him, even though counsel had told him that this was not an option. As counsel recognized, the court could not act on any application for release under section 1026.2 without first obtaining the written recommendation of DSH's medical director. (See § 1026.2, subd. (*l*).) Although the court must request such a recommendation when an NGI committee applies for a CONREP release under section 1026.2, counsel made clear that appellant did not want any such recommendation to be obtained.

Moreover, the record does not disclose any legitimate basis for trial counsel to make an application for appellant's release under section 1026.2. That section governs applications for the release of NGI committees "upon the ground that sanity has been restored." (§ 1026.2, subd. (a).) Appellant points to no evidence

that would have supported the making or granting of such an application. There was nothing to suggest that appellant's sanity had been restored or was in the process of being restored, and the court had just found that he currently represented a substantial danger of physical harm to others by reason of his mental disorder. (See *People v. Sword* (1994) 29 Cal.App.4th 614, 620 [recognizing that outpatient treatment for NGI committees "'is a discretionary form of treatment to be ordered by the committing court only if the medical experts who plan and provide treatment conclude that such treatment would benefit the [offender] and cause no undue hazard to the community'"].)

We also reject appellant's alternative contention that his request for a CONREP release should have been evaluated under section 1602 as well as section 1026.2. Appellant erroneously asserts that "[b]ecause [he] was convicted of violating Penal Code section 422, he appears to fall within language of" section 1601, subdivision (b). But appellant was not convicted of violating section 422; rather, he was found NGI of that felony offense. As relevant here, subdivision (b) of section 1601 applies to defendants found NGI "of any *misdemeanor*" who are seeking outpatient status "*prior* to actual confinement in a state hospital or other treatment facility." (Italics added.) Because there was no legitimate factual or legal grounds for trial counsel to make an application for appellant's release under either section 1026.2 or section 1602, appellant's alternative claim that counsel provided IAC by failing to make such an application also necessarily fails. (*Strickland*, *supra*, 466 U.S. at p. 687.)

### *Equal Protection*

For the first time on appeal, appellant contends that "under equal protection principles, [he] was entitled to have his

application for outpatient treatment considered on its merits, probably under the [more] favorable conditions applied to mentally disordered offenders (MDOS) pursuant to Penal Code section 2972, subdivision (d)." Because this contention was not raised below, it is forfeited. (See *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447.) In any event, the court's beyond-a-reasonable-doubt finding that appellant currently represented a substantial danger would preclude appellant from obtaining release on outpatient status under subdivision (d) of section 2972. (See *People v. Garton* (2018) 4 Cal.5th 485, 501-502 [applying harmless error analysis to equal protection claim].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


CODY, J.


We concur:


GILBERT, P. J.


YEGAN, J.


12

Timothy S. Covello, Judge
Superior Court County of San Luis Obispo

_____

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.