Filed 9/24/24  In re O.P. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re O.P., a Person Coming Under the Juvenile Court Law. | C099858 |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>O.P.,<br><br>　　　　Defendant and Appellant. | (Super. Ct. No. JV135755) |

The minor, O.P., admitted he committed a lewd and lascivious act on a child under 14 years old and the juvenile court committed the minor to the Division of Juvenile Justice (DJJ) for two years.  After the Legislature realigned the juvenile justice system, the court recalled the commitment and committed the minor to a secure youth treatment facility (SYTF) and immediately stepped down his commitment level to global positioning system (GPS) monitoring.  On appeal, the minor first argues the juvenile court lacked jurisdiction to place him in the SYTF because he was over 25 at the time of his placement.  Second, the minor further challenges the juvenile court's denial of his motion to modify the second commitment order arguing the county improperly failed to provide him with housing.  We conclude that we

1

lack jurisdiction to consider the commitment to the SYTF but will affirm the juvenile court on his second argument.[1]

## I. BACKGROUND

While the minor was subject to other juvenile justice proceedings not relevant here, the prosecution filed a second amended petition under Welfare and Institutions Code[2] section 602. It alleged two counts that the minor committed lewd and lascivious acts on K.D., a child under 14, and two counts the minor assaulted K.D. with the intent to commit rape. (Pen. Code, §§ 220, 288, subd. (a), 288, subd. (b)(1).)

According to the intake report, the minor was between 15 and 17 years old when he sexually assaulted the six- or seven-year-old victim. The victim reported the minor would wake her up from nap time to try to make her orally copulate him. If the victim refused, the minor would not feed her or her siblings lunch. The minor also threatened to lie about the victim to her parents to get her in trouble. The victim further reported the minor would masturbate in front of her and make her watch. He also took her hand and tried to make her touch his penis. The victim could not remember how many times the minor assaulted her, but she had clear memories of two episodes.

Pursuant to a negotiated disposition, the minor admitted responsibility to one count of lewd and lascivious conduct (Pen. Code, § 288, subd. (b)(1)), with the understanding he would be committed to the DJJ for two years and he would be required to register as a sex offender (Pen. Code, § 290). The maximum term of confinement for this admission was eight years. In conjunction with this disposition, the juvenile court dismissed the remaining charges and the prosecution withdrew its motion to transfer the minor to a court of criminal jurisdiction. On June 16, 2022, the juvenile court committed the minor to the DJJ for two years. He was 25 years old at the time.

---

[1] The court denies the People's motion to take judicial notice of the juvenile court's file in the separate writ petition.

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

After the minor was committed to the DJJ, he was placed in the sexual behavioral treatment program.

In January 2023, the probation department filed a petition to recall the minor's commitment to DJJ pursuant to Senate Bill No. 823 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 337), which realigned the juvenile justice system. Until recently, DJJ was "the state's most restrictive placement for its most severe juvenile offenders." (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902.) In 2020, the Legislature enacted juvenile justice realignment by passing Senate Bill No. 823. Implementing the Legislature's juvenile justice realignment program required the eventual closure of DJJ and the transfer of its responsibilities to California counties. (§ 736.5, subd. (a).) The county-level equivalent of DJJ is a secure track commitment, also known as a SYTF. (§§ 875, 875.5.) The Sacramento County SYTF is the Valley Oak Youth Academy (VOYA).

At the time of the probation department's petition to recall his commitment, the minor was working on stage one of the sexual behavioral treatment program. The probation department opposed housing the minor at VOYA because he was 26 years old. Instead, it recommended the minor be continued as a ward of the court and released on GPS monitoring until he completed the required sexual behavioral treatment program.

The court granted the probation department's petition and ordered the probation department to prepare a reentry plan.

The prosecution followed this order with a petition to house the minor at VOYA where he could complete the sexual behavioral treatment program, while the probation department asked the juvenile court to house the minor at an adult facility. The prosecution argued releasing the minor on GPS monitoring would place the community at great risk.

The juvenile court granted the minor's motion to apply his DJJ commitment credits toward his two-year commitment term and ordered the minor to be transferred to the county jail pending disposition.

The county counsel also filed a brief opposing VOYA housing for the minor. County counsel argued the court lacked jurisdiction over the minor as it had not committed him to a

3

SYTF prior to the date he turned 25. The county counsel further argued placing the minor at VOYA would have "immense impacts" because he would have to be housed alone in a fully staffed separate unit.

The probation department's reentry case plan noted the minor did not have a place to live upon his release. His father was unable to house him due to restrictions placed on him by his landlord and the minor could not live with other family members because they had children in the home. While the probation department was attempting to assist him with funding, no agreements had been reached. The only available option for housing set forth in the reentry plan was the Exodus Project, but that was limited to a maximum of a three-day hotel voucher. The reentry plan also indicated the minor would enroll in college and would work as a caregiver for his father.

At the June 21, 2023, hearing, the juvenile court committed the minor to VOYA with an immediate transfer to the less restrictive step-down program of GPS monitoring and transitional housing at Build 2 Thrive. At the hearing, probation represented the Build 2 Thrive program was a pay-per-month program and the minor said he had access to stimulus money that would allow him to pay for that housing.

At the end of July, the probation department filed a progress report that stated the minor was living at Build 2 Thrive, meeting his GPS conditions, had completed his Penal Code section 290 registration, and was enrolled in a medical assistant program at a local college.

In early August 2023, the minor contacted his probation officer and said he was no longer allowed to live at the Build 2 Thrive program and needed transitional housing. According to the program, the minor was told to leave the home because he failed to pay rent and had conflicts with the house manager and other residents. The next day, the probation department provided the minor with a hotel room voucher.

Later in the month, the minor told the probation department he could live with "family" in Reno, Nevada. The probation department was not sure this would work due to the minor's commitment order with VOYA but asked the minor for the address and information on

4

everyone who lived at that residence. Despite representing he would provide this information, the minor did not.

As of the end of August, the minor had secured a room for a month in a home. A week later, he reported he got into an argument with the homeowner and was told to leave the home.

In early September 2023, the minor filed a petition to modify the commitment order pursuant to section 779.5 asserting the probation department failed to provide him with adequate housing and treatment. At the hearing, counsel represented the probation department was "wholly failing [the minor] in that they're not able to provide him with treatment, programming, and even the basic needs of rehabilitation, which is housing, and we can't expect [the minor] to be successful with the JSO or drug counseling when he is currently homeless."

In mid-September, the probation department continued its efforts to secure housing for the minor through the 211 housing coordinator with several providers to no avail. The 211 housing coordinator ultimately found housing at the Salvation Army shelter. The minor called to inquire about any other options. He said the shelter would not be a safe space for him or good for his mental health because it was a reminder of being incarcerated. The minor also said he did not wish to work with the 211 coordinator anymore to find housing. The minor represented he would try to find shelters he learned about from friends and sleep in a friend's car in the meantime.

At the September 19, 2023, hearing, the juvenile court ordered probation to provide a response at an October 5, 2023, hearing. The minor represented to the juvenile court he was homeless. The juvenile court ordered probation to provide hotel vouchers pending that next hearing.

Later in September, the minor sought an order shortening time asserting the probation department had not given him hotel vouchers from September 19 to October 5, 2023. The application further stated the probation department could supply only a three-day voucher starting on September 20, 2023.

5

The court granted the order shortening time and issued an order to show cause (OSC) as to why the probation department should not be held in contempt.

The probation department filed a reentry plan update where they noted the attempts made to assist the minor to secure housing. The report also stated the minor was unable to work as his father's caregiver. The report observed the minor was no longer attending college because he damaged the tablet the college provided for him and the college was unable to replace it.

At the September 25, 2023, hearing, the probation department questioned whether the juvenile court had the power to order them to provide housing for the minor. At the OSC hearing, the juvenile court received evidence of the efforts made by the probation department to assist the minor to secure housing. The juvenile court found, "There is no information to suggest that Probation had not complied with the terms of the reentry plan. [¶] The issues that have been raised really are that [the minor] has not done the things that he needs to do to get on his own feet." As a result, the juvenile court discharged the OSC and found the probation department to be in compliance with its orders. It did order the probation department to continue to provide support to the minor.

On October 2, 2023, the minor filed another petition for modification of a previous order pursuant to section 779.5. The petition alleged that the current step-down program from the VOYA commitment did not meet the minor's needs or further his rehabilitation.

On October 5, 2023, the juvenile court held a hearing on this motion. The minor argued probation did not place him in any treatment programs, but rather merely provided him with referrals. The minor argued the provision of housing was an essential element of the minor's reentry plan. The juvenile court found, "In reviewing the information in the reentry update, the Court notes that there have been consistent implementation of the plan that was developed and approved at a prior court hearing, that the update indicates that [the minor] is challenged to obtain housing, but that he has been receiving support through the plan, as indicated, and some of the reasons why he was not able to maintain housing is because he had conflicts with the individuals who live there.· He does seem to have ongoing contact with Probation, and they are

6

continuing to provide him with the support to obtain access to the resources that will get him in a position so that he can provide for those needs.  [¶]  The Court goes on here to note treatment support.  The subject was referred to Hope Therapeutic Services.· The individuals from Hope reached out to the subject, but never received a response.· The subject was referred to Turning Point Community Outreach and Recovery.· There has been back and forth between the subject and Turning Point.· The subject was referred to the Anti-Recidivism Coalition, and there was a life coach that's assigned to the subject.· The life coach reported that he last heard from the subject three weeks prior to the date of this report, and the life coach indicates that he will continue his efforts to enroll [the minor] in some of their employment programs.  [¶]  With regard to employment education, it was previously noted the father, who has been here at prior hearings, did indicate to Probation he worked with the father on the reentry case plan, that the subject could be employed as his caretaker through in-home supportive services, but apparently [the minor] reported that he was unable to work with his father.  [¶]  There have been other efforts.· The subject apparently was enrolled in a UEI college, in a medical assistant program, but they reported that he was unable to continue as he damaged a tablet that was assigned.  [¶]  So the Court does, after considering all of the evidence, find that there is not good cause to grant the request and the motion filed, and so that motion is denied."

On November 7, 2023, the minor filed a notice of appeal from the October 5, 2023, denial of his motion.

## II.  DISCUSSION

A.      Appellate Jurisdiction Over the Disposition Order

The minor first argues the juvenile court lacked jurisdiction to enter a dispositional order committing the minor to VOYA because the minor was 25 at the time of the order.  The People respond the order is final and cannot now be challenged on appeal because the minor failed to timely appeal from the original June 21, 2023, dispositional order.  We agree with the People.

"One of the most fundamental rules of appellate review is that the time for filing a notice of appeal is jurisdictional."  (*In re A.O.* (2015) 242 Cal.App.4th 145, 148.)  A minor

7

may appeal a judgment in a section 602 proceeding "in the same manner as any final judgment." (§ 800, subd. (a).) The minor may also appeal any subsequent order in such proceedings "as from an order after judgment." (§ 800, subd. (a).) Generally, an appeal in a juvenile case must be filed "within 60 days after the rendition of the judgment or the making of the order being appealed." (Cal. Rules of Court, rule 8.406(a)(1); *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1138.)

Our Supreme Court's opinion of *In re G.C.* (2020) 8 Cal.5th 1119 is dispositive on this issue. There, the juvenile court entered a dispositional order for certain offenses on November 19, 2015. (*Id.* at p. 1124.) After two additional dispositional hearings and orders on December 30, 2015, and January 26, 2016, G.C. filed a notice of appeal on February 1, 2016. (*Ibid.*) G.C. attempted to challenge the November 2015 dispositional order in her appeal, by arguing the juvenile court neglected a mandatory statutory duty to specify whether the offenses found true in her wardship petitions were felonies or misdemeanors. (*Ibid.*) The Supreme Court concluded G.C.'s appeal was untimely. (*Id.* at p. 1127.) It explained the juvenile court's error was ripe for review upon the disposition of her petition in November 2015 but were not timely appealed. (*Id.* at p. 1126.) Thus, "well-settled law defeat[ed] G.C.'s further right to appellate review" of the earlier petitions. (*Id.* at p. 1127.)

Here, the same well-settled law that defeated G.C.'s right to appellate review defeats this minor's right to appellate review of the June 21, 2023, dispositional order. The 60-day deadline for appealing that order ran in September 2023, before the November 23, 2023, notice of appeal was filed. As a result, we lack appellate jurisdiction over those orders. They are final and binding and cannot be attacked here.**3**

---

**3** We are cognizant that " 'When courts use the phrase "lack of jurisdiction," they are usually referring to one of two different concepts, although, as one court has observed, the distinction between them is "hazy." [Citations.]' A lack of jurisdiction in its fundamental or strict sense results in ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.] On the other hand, a court may have jurisdiction in the strict sense but nevertheless lack " 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain

B. Motion to Modify the Commitment Order

The minor's asserted second point of error is that the juvenile court's step-down order did not meet the minor's rehabilitative needs and the court abused its discretion in failing to modify it when he brought his petition under section 779.5. The gravamen of the minor's argument is the county's failure to provide the minor with adequate housing constituted good cause to modify the order. We conclude the court did not abuse its discretion.

Section 779.5 provides a SYTF commitment order may be modified or set aside on the following grounds: "The court committing a ward to a secure youth treatment facility as provided in Section 875 may thereafter modify or set aside the order of commitment upon the written application of the ward or the probation department and upon a showing of good cause that the county or the commitment facility has failed, or is unable to, provide the ward with treatment, programming, and education that are consistent with the individual rehabilitation plan described in subdivision (d) of Section 875, that the conditions under which the ward is confined are harmful to the ward, or that the juvenile justice goals of rehabilitation and community safety are no longer served by continued confinement of the ward in a [SYTF]."

---

procedural prerequisites." [Citation.] When a court fails to conduct itself in the manner prescribed, it is said to have acted in *excess* of jurisdiction.' [Citations.] [¶] The distinction is important because the remedies are different. '[F]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent. Rather, an act beyond a court's jurisdiction in the fundamental sense is null and void' *ab initio*. [Citation.] 'Therefore, a claim based on a lack of . . . fundamental jurisdiction[] may be raised for the first time on appeal. [Citation.] "In contrast, an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time." ' " (*People v. Lara* (2010) 48 Cal.4th 216, 224-225.)

Under these standards, the challenged juvenile court order was not void and may not be attacked at any time. The juvenile court did not lack jurisdiction over the minor in the fundamental sense. Barring exceptions not applicable here, "any minor who is between 12 years of age and 17 years of age, inclusive, when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court." (§ 602, subd. (a).) This minor was 15 to 17 when he committed the offenses charged. Thus, the juvenile court had fundamental authority over the minor to adjudicate his petitions.

"As a general matter appellate courts have recognized a trial court 'has broad discretion to determine whether good cause exists.' [Citation.] In circumstances where such discretion exists, our review of the trial court's 'good cause' determination employs the familiar 'abuse of discretion' standard. [Citations.] We recognize, of course, that the court's discretion must be ' " 'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " ' " (*People v. Drew* (2017) 16 Cal.App.5th 253, 257.)

Here, the minor has failed to demonstrate the juvenile court abused its discretion when it found the minor failed to establish good cause based on the issues the minor had in securing housing. In the first instance, the minor has provided no authority for the proposition that failing to provide housing means the probation department failed to provide "treatment, programming, and education that are consistent with the individual rehabilitation plan." (§ 779.5, subd. (a).) The minor has pointed to no legal authority mandating this nor has the minor specified funding that might allow the probation department to accomplish this task.

More importantly, as the juvenile court noted, the record demonstrates minor's challenges in securing housing and completing work and educational programs were of the minor's own making, not failures of the probation department. The probation department worked with the minor continuously in attempts to secure him a housing placement. The minor was removed from the Build 2 Thrive placement due to conflicts he had with residents and the manager and his inability to pay rent despite his original agreement to do so. He was told to leave the room he rented in a residence due to an argument with the owner of the house. He rejected the Salvation Army housing opportunity and was unwilling to work further with the 211 housing coordinator to secure housing. The minor did not follow through on his commitment to provide information to the probation department about who lived with his "family" in Reno.

As it relates to his employment and education, despite promising starts on these issues, the minor was unable to secure an in-home caregiver placement with his father. Further, he

10

withdrew from the medical assistant program because he damaged the tablet the college gave him.

Given this, we conclude the court did not abuse its discretion when it found the minor failed to set forth good cause to modify its previous commitment order.

### III.  DISPOSITION

The postjudgment order is affirmed.


  /s/
WISEMAN, J.*


We concur:


  /s/
HULL, Acting P. J.


  /s/
BOULWARE EURIE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11