Filed 5/7/25  P. v. Jones CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084479 |
| v. | (Super.Ct.No. FWV08337) |
| CLEON NEAL JONES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Dismissed.

Cleon Neal Jones, in pro. per.; and Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant Cleon Neal Jones appeals from a postjudgment order denying his motion for relief due to discrimination pursuant to Penal Code section 745, subdivision (a) (the Racial Justice Act (RJA)).  Appointed counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), requesting this court to conduct an independent review of the record.  In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so.  For the reasons explained, we dismiss the appeal.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In August 1995, at about 10:30 p.m., defendant and another man approached the residence of 16-year-old Rodolfo Martinez.  Defendant, holding a 9-millimeter or .45-caliber firearm, ordered Rodolfo, his brother Eric, age 13, and their father, who were all outside the house, to lie down on the ground.  Defendant then pointed his gun at Rodolfo's cousin, Artemio Garcia, who was in his 1981 Oldsmobile Cutlass.  After defendant ordered Artemio to get out and lie down on the ground, defendant searched Artemio and took the latter's car keys, pager, and money.  Defendant's companion took Eric to the house next door and told him to look for money.  After that, the Martinez

---

[1] The factual background and part of the procedural background is taken from defendant's direct appeal following his convictions from case Nos. E021384 and E021490.  (*People v. Jones et al.* (June 1, 1999, E021384 & E021490) [nonpub. opn.] (*Jones I*).)

family and Artemio were directed to the laundry room and told to remain there. Defendant and his companion got into Artemio's car and drove away. Rodolfo and Artemio ran after them, but stopped when they heard shots fired from the car. (*Jones I, supra*, E021384 & E021490.)

Later that evening, defendant drove the stolen car into the parking lot of a Denny's restaurant in Ontario. Codefendant Tyrone Jones and an unidentified man got out, wearing masks and carrying firearms. They accosted two people, who were standing outside the door to the lounge of the restaurant, and pushed them inside at gunpoint. (*Jones I, supra*, E021384 & E021490.)

Inside the restaurant, Tyrone and the unidentified man ordered everyone to get on the ground and empty their pockets. They took the patrons' wallets and other items from them. One of the patrons was compelled to give up $150 and another one $60 to $80. Tyrone forced the manager of the restaurant to open the safe and give him $2,850. (*Jones I, supra*, E021384 & E021490.)

Some customers managed to flee from Denny's during the robbery and called 911. One customer flagged down a police car. Officer Frank Hernandez drove toward the restaurant and attempted to block defendant as he started to drive away. Defendant stopped briefly when Tyrone ran out of Denny's towards the car, but then drove away before Tyrone could enter the car. Defendant was arrested following a brief, high speed chase. Tyrone, who had attempted to run away on foot, was pursued and apprehended by other officers. (*Jones I, supra*, E021384 & E021490.)

3

A jury found defendant guilty of two counts of kidnapping for robbery (Pen. Code,[2] § 209, subd. (b)) (counts 1 and 2); four counts of second degree robbery (§ 211) (counts 3, 4, 5 and 6); one count each of attempted robbery (§§ 211, 664) and carjacking (§ 215, subd. (a)) (counts 7 and 8); and two counts of assault with a deadly weapon (§ 245, subd. (a)(2)) (counts 9 and 10).[3] The jury returned true findings on the principal armed with a firearm allegations in counts 1 through 8 (§ 12022, subd. (a)), and the personal use of a firearm allegations in counts 8 through 10 (§ 12022.5, subd.(a)). The trial court found true the allegation that defendant had suffered a prior conviction pursuant to section 667, subdivisions (b) through (i). (*Jones I*, *supra*, E021384 & E021490.) Defendant was sentenced to a total determinate term of 46 years, followed by two consecutive indeterminate life terms with the possibility of parole on counts 1 and 2 (kidnapping for robbery). (*Ibid.*)

In June 1999, defendant's judgment was affirmed with modifications to the sentence and the matter remanded for resentencing.[4] (*Jones I*, *supra*, E021384 & E021490.)

---

[2] All future statutory references are to the Penal Code unless otherwise stated.

[3] Defendant and codefendant Tyrone Jones were tried in a joint trial with separate juries. (*Jones I*, *supra*, E021384 & E021490.)

[4] Defendant's aggregate determinate sentence was modified to 34 years in 2001.

Defendant subsequently filed successive petitions for writ of habeas corpus before the trial court, as well as this court. The trial court denied an initial petition in 2000, and several successive petitions in the ensuing years.

In February 2024, defendant filed a request that the trial court recall his sentence pursuant to Assembly Bill No. 600 (2023-2024 Reg. Sess.) (Stats. 2023, ch. 446) and section 1172.1. In support, defendant attached certificates of completion of programs while incarcerated, his prison "chrono[s]," and documents showing his participation in prison programs and courses. Defendant also filed an amended motion for relief due to discrimination pursuant to section 745, subdivision (a). Defendant claimed the trial judge who ruled on his prior motion for relief in May 2024 was racially biased. In addition, defendant filed a petition for writ of habeas corpus in which he sought the reversal of his convictions based on the violation of the RJA and ineffective assistance of trial counsel. He generally claimed that he was discriminated against by the trial judge, attorneys, law enforcement officers, expert witnesses, and jurors who showed bias toward him in violation of the RJA by using racially discriminatory language against him and receiving a harsher sentence than similarly situated white men.

On May 28, 2024, the trial court issued a 17-page order denying defendant's previous petition for writ of habeas corpus. The court found all of defendant's habeas claims to be untimely except for his claim under the RJA. The court noted, "With no factual allegations to support the claim, Petitioner claims his arrest was the subject of racial profiling (Pen. Code, § 745, subd. (a)(1))." The court explained that "[t]he petition fails to allege *facts* regarding the 'similarly situated,' 'similar conduct,' and the 'similarly

5

situated individuals convicted of the same offense' in a way that brings [p]etitioner's claim within the Racial Justice Act." The court concluded "Petitioner has not alleged *any* facts that 'if true, establish that there is a substantial likelihood that a violation' of section 745 occurred" and that "[t]he petition fails to allege any potential factual circumstance by which Petitioner has any potential for habeas relief." The court therefore found "there is no basis to consider [section] 1054.9 discovery alleged in the petition."

On June 14, 2024, on our own motion, this court dismissed defendant's appeal in case No. E084139 because defendant had appealed from the trial court's denial of a petition for writ of habeas corpus.

On July 29, 2024, the trial court denied defendant's motion for relief due to discrimination under the RJA. The court found that defendant failed to make a prima facie showing for relief.

On August 1, 2024, the trial court declined to respond to defendant's petition to recall his sentence and for resentencing pursuant to section 1172.1.

Defendant timely appealed "from the denial of [his] motion for relief due to discrimination [under] Penal Code section 745 entered July 29, 2024." Defendant also filed, subsequent to the notice of appeal in this case, two writ petitions before this court, case Nos. E085210 and E085269.[5]

---

[5] Simultaneous with the filing of the *Delgadillo* brief, defendant's appellate counsel filed a motion to consolidate the three cases under one Court of Appeal case number. We denied defendant's motion to consolidate the appeal, case No. E084479,

*[footnote continued on next page]*

6

DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Delgadillo*, *supra*, 14 Cal.5th 216, setting forth a statement of the case and a summary of the procedural background. Counsel considered potential issues on appeal but found no specific arguments as grounds for relief, and requests that we exercise our discretion and independently examine the appellate record for any arguable issues.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. Defendant argues the trial court erred in denying his motion for relief and request for discovery pursuant to section 1054.9 and section 745, subdivision (a)(3), and that the denial of his motion for relief is appealable. He does not support his argument to show he was overcharged in violation of the RJA. In his habeas petitions, defendant generally asserts the RJA was violated because he was subjected to racial animus by the district attorney who failed to turn in exculpatory evidence in violation of his constitutional rights, as well as by law enforcement officers. Among others, he further claims his Fifth Amendment rights were violated, he received a harsher sentence for similarly situated white men, the district attorney overcharged him, there was implicit bias, racial statements were made at his trial, and the court deliberately destroyed the court transcripts to interfere with his RJA claims.

---

with his two pending petitions for writ of habeas corpus, case Nos. E085210 and E085269. We, however, on our own motion, took judicial notice of the pending petitions, and noted the claims raised in the petitions will be considered with the appeal as if they were raised in a personal supplemental brief.

Under *Delgadillo*, if a no-issues brief is filed in a section 1172.6 appeal and the defendant then "files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.) We are not required to conduct "an independent review of the entire record to identify unraised issues" but may do so at our discretion. (*Ibid.* ["While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal."]) However, for the reasons explained below, the trial court lacked jurisdiction to grant defendant's section 745 motion, so the denial did not affect defendant's substantial rights and the order is not appealable. And even if we construed the motion as a habeas petition (which would be authorized), the order is still not appealable, because habeas denials are not appealable.

Effective January 1, 2021, the California Racial Justice Act of 2020 (Stats. 2020, ch. 317, § 1) added section 745 to the Penal Code. That statute provides that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) A violation of the RJA occurs if, among other things, the judge, a juror, an attorney, a law enforcement officer, or an expert witness in a case exhibited "bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(1).)

At the time defendant filed his motion, and as amended by Assembly Bill No. 1118 (2023-2024 Reg. Sess.) (Stats. 2023, ch. 464), effective January 1, 2024, subdivision (b) of section 745 provided, "A defendant may file a motion pursuant to this

8

section, or a petition for writ of habeas corpus or a motion under Section 1473.7, in a court of competent jurisdiction, alleging a violation of subdivision (a). For claims based on the trial record, a defendant may raise a claim alleging a violation of subdivision (a) on direct appeal from the conviction or sentence. The defendant may also move to stay the appeal and request remand to the superior court to file a motion pursuant to this section. If the motion is based in whole or in part on conduct or statements by the judge, the judge shall disqualify themselves from any further proceedings under this section."

As originally enacted, section 745 expressly applied to cases where judgment was entered on or after January 1, 2021, the effective date of the RJA.[6] (§ 745, former subd. (j); *People v. Lashon* (2024) 98 Cal.App.5th 804, 810 (*Lashon*).) Subsequently, effective January 1, 2023, the Legislature amended section 745 to provide for retroactive application in all cases where judgment was entered prior to January 1, 2021, in phases. (§ 745, subd. (j); *Lashon*, at p. 810.) Subdivision (j) of section 745 now provides:

"(j) This section applies as follows:

"(1) To all cases in which judgment is not final.

"(2) Commencing January 1, 2023, to all cases in which, at the time of the filing of a petition pursuant to subdivision (e) of Section 1473 raising a claim under this section, the petitioner is sentenced to death or to cases in which the motion is filed pursuant to Section 1473.7 because of actual or potential immigration consequences

---

[6] "This section applies only prospectively in cases in which judgment has not been entered prior to January 1, 2021." (§ 745, former subd. (j).)

9

related to the conviction or sentence, regardless of when the judgment or disposition became final.

"(3) Commencing January 1, 2024, to all cases in which, at the time of the filing of a petition pursuant to subdivision (e) of Section 1473 raising a claim under this section, the petitioner is currently serving a sentence in the state prison or in a county jail pursuant to subdivision (h) of Section 1170, or committed to the Division of Juvenile Justice for a juvenile disposition, regardless of when the judgment or disposition became final.

"(4) Commencing January 1, 2025, to all cases filed pursuant to Section 1473.7 or subdivision (e) of Section 1473 in which judgment became final for a felony conviction or juvenile disposition that resulted in a commitment to the Division of Juvenile Justice on or after January 1, 2015.

"(5) Commencing January 1, 2026, to all cases filed pursuant to Section 1473.7 or subdivision (e) of Section 1473 in which judgment was for a felony conviction or juvenile disposition that resulted in a commitment to the Division of Juvenile Justice, regardless of when the judgment or disposition became final."

"In a system of separated powers, courts observe jurisdictional limits and focus scarce judicial resources on deciding cases within the scope of their authority." (*People v. Chavez* (2018) 4 Cal.5th 771, 779 (*Chavez*).) "A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case. [Citation.] If a court lacks such '"fundamental"' jurisdiction, its ruling is void." (*People v. Ford* (2015) 61 Cal.4th 282,

10

286.)  "'[F]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent.'" (*People v. Lara* (2010) 48 Cal.4th 216, 225.)  It is well settled that we must consider the issue of jurisdiction, even if it was overlooked by the trial court and the parties below. (*People v. Hoyt* (2020) 8 Cal.5th 892, 911.)

"As a general rule of common law, the sentencing court loses jurisdiction to vacate or modify the judgment in a criminal case after the defendant has started to serve the sentence."  (*People v. Williams* (2021) 65 Cal.App.5th 828, 832; accord, *People v. Mayberry* (2024) 102 Cal.App.5th 665, 672 (*Mayberry*).)  However, the Legislature has created statutory exceptions to this rule, which now include the RJA.  (See *Mayberry*, at p. 672.)[7]  As explained below, we conclude the trial court lacked jurisdiction over defendant's section 745 motion to grant the requested relief.

Here, defendant did not seek relief in the trial court under section 1473.7 and he does not claim otherwise on appeal.  Defendant is still serving his sentence for his crimes and, under the plain and unambiguous terms of the statute, he is not eligible to seek relief via a section 1473.3 motion.[8]  (*People v. Reynoza* (2024) 15 Cal.5th 982, 989-990 [courts must generally follow plain meaning].)

---

[7]  Additionally, "[i]f a modification does not make a substantive change to a sentence but simply corrects a clerical error, the trial court has the inherent power to correct its own records at any time.  [Citation.]  And a trial court may of course rule on a defendant's challenge to an unlawful sentence in a properly filed petition for a writ of habeas corpus.  [Citation.]"  (*People v. King* (2022) 77 Cal.App.5th 629, 637.)

[8]  The principles governing statutory interpretation are well established.  "'Our fundamental task is to determine the Legislature's intent to effectuate the law's purpose, giving the statutory language its plain and commonsense meaning.  We examine that

*[footnote continued on next page]*

Effective January 1, 2023, subdivision (j), now provides that section 745 applies "[t]o all cases in which judgment is *not* final" and, in four phases as specified, to all cases in which judgment or disposition *is* final. (*Id.*, subd. (j)(1-5), italics added; see *People v. Stamps* (2020) 9 Cal.5th 685, 698-699.)

Defendant's judgment became final in 1999 and he is not sentenced to death or challenging immigration consequences. (§ 745, subd. (j)(1)-(2).) Therefore, he does not fall within the first phase of retroactive application, effective January 1, 2023. (*Id.*, subd. (j)(2).) He was also not sentenced to prison "pursuant to subdivision (h) of Section 1170, or committed to the Division of Juvenile Justice for a juvenile disposition" (*id.*, subd. (j)(3)), and his judgment was not final on or after January 1, 2015 (*id.*, subd. (j)(4)). Instead, defendant's conviction falls within the last category of retroactivity, applicable to all felony convictions regardless of when judgment was final. (*Id.*, subd. (j)(5).) Under this provision, commencing January 1, 2026, defendant may seek relief under section 745 vis-à-vis a habeas petition under section 1473 if imprisoned or restrained or a motion under section 1473.7 if no longer in criminal custody.

---

language, not in isolation, but in the context of the statutory framework as a whole to discern its scope and purpose and to harmonize the various parts of the enactment. [Citation.] "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] The wider historical circumstances of a law's enactment may assist in ascertaining legislative intent, supplying context for otherwise ambiguous language.' [Citation.] 'Generally, we consult extrinsic sources, like a statute's history, to interpret a statute only when its language is ambiguous[, however].' [Citation.]" (*People v. Prudholme* (2023) 14 Cal.5th 961, 975-976.)

Based on the foregoing, we shall dismiss the appeal.

IV.

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____
J.

We concur:


MILLER _____
Acting P. J.


MENETREZ _____
J.

13